NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| CARY GLASTEIN, M.D. | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 18-9664-BRM-DEA |
| CAREFIRST BLUE CROSS BLUE SHEILD, *and*, | : **OPINION** |
| CEDAR CREST VILLAGE, INC., | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are (1) Plaintiff Cary Glastein, M.D.'s ("Dr. Glastein") Motion to Remand (ECF No. 7) and (2) Defendants CareFirst of Maryland, Inc. d/b/a CareFirst Blue Cross Blue Shield ("CareFirst") and Cedar Crest Village, Inc.'s ("Cedar Crest") (collectively, "Defendants") Motion to Dismiss (ECF No. 6). Both motions are opposed. (ECF Nos. 13 & 14.) Having reviewed the parties' submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Dr. Glastein's Motion to Remand is **GRANTED**, and Defendants' Motion to Dismiss is **ADMINISTRATIVELY TERMINATED** with leave to refile in state court if appropriate.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of Dr. Glastein's[1] claim against self-insurer Cedar Crest[2] and health plan administrator CareFirst[3] concerning payment for surgery Dr. Glastein performed. (ECF No. 1-1 ¶¶ 19-22.) Cedar Crest insured the surgery patient (the "Patient")[4] under Cedar Crest's self-insured health plan. (*Id.* ¶ 16.) CareFirst administered that plan, acting as Cedar Crest's agent. (*Id.* ¶ 16.) Dr. Glastein did not belong to Cedar Crest's or CareFirst's network of providers. (*Id.* ¶ 15.)

Prior to undergoing surgery, the Patient purported to assign Dr. Glastein the health insurance benefits to which the Patient was entitled under her health insurance plan. (Certification of Wanda Lessner (ECF No. 14-1) ¶ 5.) However, the terms and conditions of the Patient's health insurance plan prohibited the Patient from "assign[ing] his or her right to receive benefits or benefit payments . . . to another person or entity." (Evidence of Coverage (ECF No. 1-5) at 32.)

Following the Patient's purported assignment but before the surgery, Dr. Glastein requested and received "authorization approving the rendering of surgical services to the Patient."[5] (ECF

---

[1] Dr. Glastein is a licensed orthopedic surgeon in Tinton, New Jersey. (Compl. (ECF No. 1-1) ¶ 1.)

[2] Cedar Crest is a Maryland corporation that maintains a principal place of business at the senior living facility it operates in Pompton Plains, New Jersey. (Notice of Removal (ECF No. 1) ¶¶ 4, 21.)

[3] "CareFirst is a Maryland not-for-profit corporation and its headquarters and principal place of business are located [in] Baltimore, Maryland." (ECF No. 1 ¶ 2.)

[4] The Patient is not a party to this action.

[5] Dr. Glastein filed his request for preauthorization with Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), the Blue Cross Blue Shield Association ("Association") licensee in New Jersey. (ECF No. 14-1 ¶ 4.) Horizon electronically routed the claim to CareFirst via the Association's electronic Inter-plan Teleprocessing System. (*Id.* ¶ 4-5.) Neither Horizon nor the Association is a party.

No. 1-1 ¶ 17.) Although Dr. Glastein did not belong to Cedar Crest's or CareFirst's network of healthcare providers, CareFirst approved Dr. Glastein's request. (*Id.* ¶ 17.) After performing the approved surgery on April 19, 2016 (*id.* ¶¶ 18-19), Dr. Glastein billed CareFirst $207,450.00, of which CareFirst paid only $4,751.02 (*id.* ¶¶ 20-22).

On April 12, 2018, Dr. Glastein filed a four-count Complaint alleging state law claims for breach of contract, promissory estoppel, account stated, and fraudulent inducement. (*Id.* ¶¶ 25-48.) The Complaint explicitly disclaimed any claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1-1 ¶ 11.) On May 24, 2018, Defendants filed a notice of removal. (ECF No. 1.) On June 14, 2018, Defendants moved to dismiss this action for failure to state a claim on which relief could be granted. (ECF No. 6.) On June 22, 2018, Dr. Glastein moved to remand this case to state court, arguing that this Court lacks subject matter jurisdiction. (ECF No. 7.)

## II.    LEGAL STANDARD

When a Defendant removes a case to federal court, the Court must remand the case back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quoting *Batoff v. State Farm Ins. Co.*, 977 F. 2d 848, 851 (3d Cir. 1992)). "[W]hen a case is removed to federal court, the removing defendant bears the burden of establishing subject-matter jurisdiction." *Martin v. Wal-Mart Stores, Inc.*, 709 F. Supp. 2d 345, 347 (D. N.J. 2010); *see also Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

## III. DECISION

Defendants assert two independent bases for subject matter jurisdiction: diversity jurisdiction and federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a)(1). The Court concludes that neither ground constitutes a valid basis for subject matter jurisdiction and will discuss each in turn.

### A. Diversity Jurisdiction

Dr. Glastein argues that because he (a New Jersey plaintiff) is from the same state as Cedar Crest (a New Jersey defendant), complete diversity does not exist between plaintiff and defendants, depriving this Court of diversity jurisdiction. *See, e.g.*, *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (reiterating the "complete diversity" requirement). Defendants concede that if the Court considers Cedar Crest for diversity purposes, Cedar Crest will destroy complete diversity. However, Defendants argue this Court has diversity jurisdiction because Dr. Glastein (a New Jersey citizen) and defendant CareFirst (a Maryland citizen) have diverse citizenship, and further argue that the diversity analysis should disregard defendant Cedar Crest (a New Jersey citizen). Defendants argue that this Court must disregard Cedar Crest's citizenship because (1) Dr. Glastein fraudulently joined Cedar Crest, and (2) Cedar Crest is a nominal defendant. The Court rejects both arguments. Because the Court must consider Cedar Crest's citizenship, Cedar Crest destroys complete diversity, and the Court therefore lacks diversity jurisdiction.

#### 1. Fraudulent Joinder

Dr. Glastein did not fraudulently join Cedar Crest as a defendant because Dr. Glastein asserts colorable claims against Cedar Crest. "The fraudulent joinder doctrine permits courts to ignore the citizenship of a non-diverse defendant for diversity purposes if the plaintiff's joinder of

that defendant is 'fraudulent.'" *Hogan v. Raymond Corp.*, 536 F. App'x 207, 210 (3d Cir. 2013). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006)). This analysis focuses on the plaintiff's *claims*, ignoring the plaintiff's *motives*: "The fact that the plaintiffs' motive for joining a [non-diverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985).

A review of a plaintiff's claims for a colorable ground is less searching even than the minimal inquiry required when reviewing a motion to dismiss for failure to state a claim. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). A plaintiff fraudulently joins a defendant only where the claim is "barred beyond question" or "wholly insubstantial and frivolous," or where "no possibility [exists] that a state court would find that the plaintiff pleaded a valid cause of action against a defendant who was not diverse." *Hogan*, 536 F. App'x at 210; *Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 F. App'x 432, 433 (3d Cir. 2011); *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). "[T]he removing party carries a heavy burden of persuasion in making this showing." *Batoff*, 977 F.2d at 851.

Examples of claims lacking a colorable ground are rare. For instance, a claim barred by a defendant's legal privilege or by the applicable statute of limitations lacks a colorable ground of support. *Roggio*, 415 F. App'x at 433; *In re Briscoe*, 448 F.3d at 219. Likewise, a claim lacks a colorable ground of support if a plaintiff brings the claim outside a statutory framework when the statutory framework provides the exclusive means of recovery. *Hogan*, 536 F. App'x at 210.

Defendants cannot meet the extraordinary burden of fraudulent joinder because Dr. Glastein's claims are colorable. New Jersey law recognizes that when an agent enters into a contract, the contract generally binds the principle. *See, e.g.*, *Alfano v. BDO Seidman, LLP*, 925 A.2d 22, 27 (N.J. Super. App. Div. 2007). Likewise, New Jersey law recognizes that a principal is generally liable for the tortious acts of its agent. *See, e.g.*, *Estate of Cordero ex rel. Cordero v. Christ Hosp.*, 958 A.2d 101, 105 (N.J. Super. App. Div. 2008). The Complaint alleges that Dr. Glastein asked CareFirst, acting as Cedar Crest's agent, to pay for the surgery he intended to perform on the Patient, and that agent CareFirst agreed on principal Cedar Crest's behalf. (ECF 1-1 ¶¶ 5, 16-17.) The Complaint further alleges that both defendants tortiously failed to reimburse Dr. Glastein for the surgery he performed. (*Id.* ¶¶ 18, 22.) To the extent Dr. Glastein sued Cedar Crest for actions undertaken by its agent CareFirst, this Court cannot conclude that Dr. Glastein's claims against principal Cedar Crest are "barred beyond question" or "wholly insubstantial and frivolous," nor can this Court conclude that "no possibility [exists] that a state court would find that the plaintiff pleaded a valid cause of action against" Cedar Crest. *Hogan*, 536 F. App'x at 210; *Roggio*, 415 F. App'x 432 at 433; *Angus*, 989 F.2d at 146.

Defendants raise five arguments in response. None are persuasive.

First, Defendants argue that the Complaint's allegations are insufficient to infer the existence of any agency relationship between Cedar Crest and CareFirst. This argument is mistaken. The Complaint explicitly identifies CareFirst as Cedar Crest's agent and explains the nature of the agency relationship: CareFirst administered Cedar Crest's self-insured health plan. (ECF 1-1 ¶¶ 5, 16.)

Second, Defendants argue that Cedar Crest is not an appropriate defendant because the Complaint does not allege any direct interaction between Cedar Crest and Dr. Glastein, and

therefore Cedar Crest cannot be liable to Dr. Glastein. This argument misunderstands Dr. Glastein's claims, which allege that Cedar Crest is liable for the actions of its agent CareFirst—regardless of whether Cedar Crest directly interacted with Dr. Glastein. (Compl. ¶¶ 5, 16.) Defendants' cited authority is distinguishable for exactly this reason. *See E. Coast Adv. Plastic Surgery v. Aetna, Inc.* ("*ECAPS*"), Civ. No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018). In *ECAPS*, the plaintiff healthcare provider alleged no facts connecting the defendant employer with the failure of the defendant insurance company's failure to pay the healthcare provider's full invoice—whether through an agency relationship or otherwise. *Id.* at *3. Contrast *ECAPS* with this case, in which Dr. Glastein alleges an agency relationship between CareFirst and Cedar Crest, such that when agent CareFirst acts, its acts are imputed to principal Cedar Crest.

Fourth, Defendants argue that Dr. Glastein's motive for joining Cedar Crest was to destroy complete diversity. Even if true, "[t]he fact that the plaintiffs' motive for joining a [non-diverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abels*, 770 F.2d at 32. Dr. Glastein's motive for joinder is legally irrelevant.

Finally, Defendants argue that if Cedar Crest is liable on a principal-agency theory, then that principal-agency relationship transforms Dr. Glastein's claims into ERISA claims that qualify this case for federal question jurisdiction. The Court rejects this argument. *See* Part III.B., *infra.*

Because Dr. Glastein raises colorable claims against Cedar Crest, Defendants fail to meet the extraordinary burden to show that Dr. Glastein fraudulently joined Cedar Crest. Therefore, fraudulent joinder is not a basis for this Court to disregard Cedar Crest's citizenship in the diversity analysis.

## 2. Nominal Party

Defendants also argue that this Court may ignore Cedar Crest's citizenship for diversity purposes because Cedar Crest is a nominal party. The Court disagrees. As further discussed below, because Cedar Crest is a real party to the controversy, the Court must consider Cedar Crest's citizenship for diversity purposes.

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Narraro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). While this formulation seems simple enough, there is some confusion about exactly what constitutes a "nominal party." *See, e.g.*, *Am. Asset Fin., LLC v. Corea Firm*, 821 F. Supp. 2d 698, 700 (D.N.J. 2011) (discussing the multiple tests courts have used to determine whether a party is "nominal"). Several themes emerge from the caselaw: a party "named to satisfy state pleading rules, . . . joined only as designated performer of a ministerial act, . . . or [who] otherwise ha[s] no control of, impact on, or stake in the controversy" is likely to be a nominal party. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 92 (2005); *see also Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) ("Nominal parties are generally those without a real interest in the litigation."). Likewise, a nominal party will be unconnected to the wrongdoing alleged in the Complaint. *Michaels v. New Jersey*, 955 F. Supp. 315, 320 (D.N.J. 1996). By contrast, a party who will be liable on an adverse judgment is not a nominal party. *Lincoln Prop. Co.*, 546 U.S. at 93.

Cedar Crest is not a nominal party because it has a genuine stake in this controversy. Dr. Glastein joined Cedar Crest as a defendant because Cedar Crest, acting through its agent CareFirst, allegedly promised to reimburse Dr. Glastein for surgery he performed and then failed to do so. Cedar Crest will be liable on a judgment in Dr. Glastein's favor. Importantly, Dr. Glastein did not join Cedar Crest merely to satisfy state pleading rules nor because Cedar Crest performed only

ministerial acts. Cedar Crest does not merely hold money belonging to alleged wrongdoer CareFirst. *Cf. Eyal Lior v. Sit*, 913 F. Supp. 868, 877 (D.N.J. 1996) (holding that a potential garnishee is a nominal party). Rather, Cedar Crest is directly connected to the wrongdoing alleged in the Complaint through the actions of its agent, CareFirst. Accordingly, Cedar Crest is not a nominal party.

Defendants argue that the term "nominal party" incorporates the standard for parties required to be joined under Federal Rule of Civil Procedure 19(a). No decision of the Third Circuit nor within the District of New Jersey agrees, *see Vollers Excavat'g & Constr. Co. v. AIG Baker Mt. Olive, LLC*, Civ. Nos. 02-2737 & 4314, 2004 WL 7331448, at *3 (D.N.J. Dec. 22, 2004), and the Court declines to find such a broad interpretation.[6]

---

[6] Even if the Court were to apply Rule 19, it would reach the same result, because Cedar Crest is a required party under Rule 19(a), and therefore not a "nominal party" under Defendants' theory. Under Rule 19(a), this Court must join a person as a party if

> (A)  in that person's absence, the [C]ourt cannot accord complete relief among existing parties; or
> (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i)  as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). When an agent enters into a contract on behalf of a principal and the counter-party sues for breach of contract, the principal is generally required to be joined as a defendant, because "the principal[] obviously has a substantial stake and interest in the claim," and "could be severely prejudiced if the case was decided without" the principal's participation as a party. *Poulos v. Nicolaides*, 241 F. App'x 25, 27-28 (3d Cir. 2007). Here, the Complaint alleges agent CareFirst entered into a contract on principal Cedar Crest's behalf. As principal, Cedar Crest has a "substantial stake and interest in the claim" because Cedar Crest would be liable on any judgment. *See id.* Additionally, Cedar Crest "could be severely prejudiced if the case was decided without" Cedar Crest's participation because a decision could confirm the validity of Dr. Glastein's legal theory, which applies equally to both CareFirst and Cedar Crest. *Id.* Accordingly, Cedar Crest is

Because Cedar Crest is not a nominal party, and because Dr. Glastein did not fraudulently join Cedar Crest, the Court cannot ignore Cedar Crest's citizenship for diversity purposes. Accordingly, Cedar Crest's presence in the lawsuit destroys complete diversity, and the Court lacks diversity jurisdiction over this action.

B.     **Federal Question Jurisdiction: ERISA Preemption[7]**

Defendants also argue Dr. Glastein's state law claims are, in fact, federal ERISA claims over which this Court has federal question jurisdiction. The Court disagrees.

"Ordinarily, the well-pleaded complaint rule prevents an action from being removed to federal court where federal jurisdiction is not presented on the face of the complaint." *Ciferni v. Day & Zimmerman, Inc.*, 529 F. App'x 199, 202 (3d Cir. 2013). "But the doctrine of complete preemption creates an exception to the well-pleaded complaint rule." *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531 (3d Cir. 2010). "ERISA's civil enforcement mechanism, § 502(a), 'is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004)).

ERISA § 502(a) completely preempts an action "only if (1) the [plaintiff] could have brought its . . . claim[s] under § 502(a), and (2) no other legal duty supports the [plaintiff]'s claim[s]." *Id.* at 400. "Because the test is conjunctive, a state-law cause of action is completely

---

a necessary party under Rule 19(a), and cannot be a nominal party under Defendant's theory, even if the Court were to consider Rule 19.

[7] Under ERISA, there are two forms of preemption. *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). Both parties agree that only the first—complete preemption under ERISA § 502(a)—is at issue. (ECF No. 14, at 14 n.2; ECF No. 17, at 4.)

preempted only if both of its prongs are satisfied." *N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). The party seeking removal bears the burden of proving that the state law claim is, in fact, an ERISA claim. *Pascack Valley Hosp.*, 388 F.3d at 401.

1. **Proper ERISA Claim**

With regard to the first prong, a plaintiff could have brought its claim under § 502(a) if (1) the plaintiff is the type of party who can bring a claim under § 502(a) and (2) the claim is properly characterized as a claim for benefits under § 502(a). *E. Coast Adv. Plastic Surgery v. Horizon Blue Cross Blue Shield of N.J.*, 2018 WL 6178869, at *3 (D.N.J. Nov. 26, 2018); *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011). Defendants cannot demonstrate either element of this first prong.

a. **Appropriate Plaintiff**

As to the first step of the analysis, Dr. Glastein is not the type of party who can bring a claim under § 502(a). A healthcare provider generally cannot bring an ERISA claim for benefits to which the insured party is entitled. *See* 29 U.S.C. § 1132(a)(1)(B); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). An exception exists when an insured "assigns payment of insurance benefits to a healthcare provider[;] that provider gains standing to sue for that payment under ERISA § 502(a)." *Id.*

This exception applies to "*properly* assigned ERISA claims." *CarioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014) (emphasis added). The "properly assigned" language is noteworthy, because a health insurance plan may prohibit the insured from assigning the insured's benefits to the healthcare provider. So-called "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports*

*Med. v. Ind. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). Unless the clause were unenforceable, such an anti-assignment clause bars a healthcare provider from vicariously asserting the insured's ERISA claim for benefits. *See, e.g.*, *Adv. Orthopedics & Sports Med. Inst. v. Blue Cross Blue Shield of N.J.*, Civ. No. 17-11807, 2018 WL 3630131, at \*4 (D.N.J. July 31, 2018) ("*AOSMI*"); *Emani v. Quinteles*, Civ. No. 17-3069, 2017 WL 4220329, at \*2-3 (D.N.J. Sep. 21, 2017) (collecting cases).

In this case, the terms and conditions of the Patient's health insurance contained such an anti-assignment clause, prohibiting the Patient from assigning to a third party any of the Patient's benefits under the plan. (ECF No. 1-5, at 32.) Accordingly, the Patient could not validly assign benefits to Dr. Glastein, who therefore may not bring an ERISA claim for those benefits. *See AOSMI*, 2018 WL 3630131, at \*4.

Defendants concede the existing law compels this result (ECF No. 14, at 18), but nevertheless argue for a contrary decision.

First, Defendants argue this Court should ignore the anti-assignment provision for jurisdictional purposes and postpone decision on the validity of the Patient's purported assignment until later in the litigation. The Court rejects this proposal because Defendants do not challenge the enforceability of the anti-assignment clause and do not argue in support of the validity of the Patient's purported assignment of benefits to Dr. Glastein. Courts "generally decide only those issues raised by parties," and when "neither party argues" that the anti-assignment clause is unenforceable or that the assignment is valid, this Court will not stretch to analyze these issues *sua sponte*. *Armotek Indus. v. Empl'rs Ins. of Wasusau*, 952 F.2d 756, 759 (3d Cir. 1991); *cf. Cohen v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 15-4525, 2017 WL 685101, at \*4 & n.5 (D.N.J. Feb. 21, 2017) (assuming the validity of an assignment where no party challenged the assignment).

Because no party challenges the anti-assignment clause, the Court must apply the uncontested clause at all stages of this litigation.

Second, Defendants claim *AOSMI* violates the principle that an assignee can acquire no more rights than his assignor. This argument mischaracterizes Dr. Glastein's claims. Dr. Glastein does not sue as an assignee of the Patient; Dr. Glastein's claims arise independent of any relationship between the Patient and either CareFirst or Cedar Crest.

Finally, Defendants contend the rule of *AOSMI* and similar decisions is inconsistent with congressional intent to maximize ERISA's preemption of state law while minimizing the available remedies under ERISA. This Court disagrees. The Defendants' proposed rule "would not further the principal purpose of ERISA to protect plan beneficiaries and participants," because the absence of a remedy for non-payment would create a "risk of non-payment [that] might lead medical providers to decide not to treat, or to otherwise screen, patients who are participants in certain plans." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017). Congress would not have intended this result.

Having rejected all the proposed arguments for overturning *AOSMI*, the Court must apply the anti-assignment clause, which invalidates the Patient's purported assignment of benefits to Dr. Glastein. Defendants therefore fail the first step of the analysis concerning whether Dr. Glastein could have brought his claims under § 502(a) because without a valid assignment from the Patient, Dr. Glastein is not the type of plaintiff who may bring a claim under § 502(a).

### b. Appropriate Claim

Not only do Defendants fail the first step of the analysis, but Defendants also fail the second step. Dr. Glastein's claims are not appropriately characterized as ERISA claims because Dr.

Glastein's right to recovery does not depend on any rights or entitlements under the Patient's health insurance plan.

An ERISA claim must seek "to recover benefits due to [a participant or beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or the clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Claims that "do[] not challenge the type, scope or provision of benefits under [a patient's] healthcare plan," but instead "only assert[] [the] right [of] a third-party [healthcare] provider to be reimbursed for pre-authorized medical services [the healthcare provider] rendered to" a patient, cannot be appropriately characterized as ERISA claims. *E. Coast Adv. Plastic Surgery v. AmeriHealth*, Civ. No. 17-8409, 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018).

Defendants argue that Dr. Glastein's claims are ERISA claims because they require an interpretation of the terms and conditions of the Patient's health insurance, including questions such as the scope of the Patient's medical coverage, whether the Patient's surgery was medically necessary and appropriate, or whether the Patient has any coverage at all. This argument misconstrues the nature of Dr. Glastein's claims. Dr. Glastein's theory of recovery is that he is entitled to reimbursement in light of CareFirst's representations to him in the course of providing medical care to the Patient, irrespective of the Patient's insurance coverage. Under Dr. Glastein's theory of the case, his contractual and quasi-contractual claims would stand even if all questions concerning the Patient's health coverage were resolved against Dr. Glastein, because his claims do not depend on the Patient's health coverage—the claims instead depend on CareFirst's representations to Dr. Glastein. Dr. Glastein "only asserts his right as a third-party [healthcare] provider to be reimbursed for pre-authorized medical services [he] rendered to" the Patient. *E. Coast Adv. Plastic Surgery*, 2018 WL 1226104, at *3.

Accordingly, Dr. Glastein's state law claims are not appropriately characterized as ERISA claims because the claims do not seek to recover plan benefits, enforce plan rights, or clarify rights to future plan benefits. 29 U.S.C. § 1132(a)(1)(B). Defendants therefore fail the second step of the analysis concerning whether Dr. Glastein could have brought his claims under ERISA § 502(a). Having also failed the first step, Defendants cannot demonstrate that Dr. Glastein could have brought his claims under ERISA § 502(a).

### 2. Non-ERISA Basis for Claim

ERISA likewise does not preempt Dr. Glastein's claims, because his claims arise from legal duties independent of ERISA—in this case, legal duties imposed by state contract law.

> [C]ourts have held that a legal duty is "independent" if it is not based on an obligation under an ERISA plan, or if it "would exist whether or not an ERISA plan existed." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009). In other words, if the state law claim is not "derived from, or conditioned upon" the terms of an ERISA plan, and "[n]obody needs to interpret the plan to determine whether that duty exists," then the duty is independent. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013); *accord Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 62 (2d Cir. 2010).

*N.J. Carpenters*, 760 F.3d at 303. In other words, a legal duty other than ERISA supports a legal claim in any of the three circumstances: (1) when the claimant's "right to recovery, if it exists, depends entirely on the operation" agreements and representations "that are independent of the [insurance plan] itself;" (2) if the participant or beneficiary would be unable to assert an identical claim; or (3) if the parties' controversy centers on the amount owed rather than on the right to payment at all. *Pascack Valley Hosp.*, 388 F.3d at 402-03.

This case fits not just one, but all three categories. First, Dr. Glastein's right to recovery depends on how state law treats the representations CareFirst made to Dr. Glastein and does not depend on the terms and conditions of the Patient's insurance plan. Second, the Patient would be unable to assert an identical claim, because CareFirst made its representations to Dr. Glastein, not

to the Patient. Finally, given that the Complaint alleges that CareFirst made a payment to Dr. Glastein (ECF No. 1-1 ¶ 29), the dispute in this case focuses on the amount of payment required, not the right to payment under the Patient's insurance plan.

Defendants argue that CareFirst's representations to Dr. Glastein—the "preauthorization" for the surgery he performed on the Patient—was not a promise of reimbursement nor a guarantee for a particular level of payment but was instead merely a review of the medical necessity of a particular procedure. The Complaint characterizes the preauthorization differently: as an offer to pay the fair, reasonable, customary, and usual amount for this type of service provided by a surgeon with Dr. Glastein's level of training and experience. (ECF No. 1-1 ¶¶ 26-28, 33, 38, 43-44.) Nothing in the record before the Court contradicts the Complaint's allegations.[8] In the absence of other record evidence, those allegations govern. *See Church of Univ. Bhd. v. Farmington Twp. Superv'rs*, 296 F. App'x 285, 288 (3d Cir. 2008) (noting that a Court may consider evidence outside the complaint when evaluating the Court's subject matter jurisdiction).

The Complaint demonstrates that Dr. Glastein's claims are independent from, and do not derive from, ERISA. An interpretation of the Patient's health insurance plan terms and conditions is not necessary to the resolution of Dr. Glastein's claims. Just as ERISA does not preempt Dr. Glastein's state law claims because he could not have brought his claims under § 502(a), ERISA likewise does not preempt Dr. Glastein's claims because the legal duties created by state contract law—and not ERISA—form the basis of Dr. Glastein's claims. Accordingly, ERISA does not preempt Dr. Glastein's state law claims, and the Court therefore lacks federal question jurisdiction.

---

[8] Defendants argument in their brief to this effect (ECF No. 14, at 23) is insufficient to contradict the Complaint's allegations. "It is well settled that arguments by counsel cannot provide factual support for a trial court's findings." *In re Fed. Mogul-Global, Inc.*, 348 F.3d 390, 406 (3d Cir. 2003).

## IV. CONCLUSION

For the reasons set forth above, Dr. Glastein's Motion to Remand (ECF No. 7) is **GRANTED**, and Defendants' Motion to Dismiss (ECF No. 6) is **ADMINISTRATIVELY TERMINATED** with leave to refile in state court. This matter is therefore **REMANDED** to the Superior Court of New Jersey, Law Division, Monmouth County, and this case is **CLOSED**. An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: March 28, 2019